UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------x
Stephen Charles,

              Petitioner,

  -against-                      **MEMORANDUM AND ORDER**
                                    Case No. 15-CV-03425 (FB)
DALE A. ARTUS,
Warden of Attica Correctional Facility,
Attica, New York,

              Respondent.
-----------------------------------------------x

Appearances:
*For the Plaintiff:*                            *For the Defendant:*
JOEL B. RUDIN                               ERIC GONZALEZ
Law Offices of Joel B. Rudin, P.C.       District Attorney, Kings County
600 Fifth Avenue, 10th Floor             350 Jay Street, 16th Floor
New York, NY 10020                      Brooklin, NY 11201
                                                          By: DANIEL BERMAN

**BLOCK, Senior District Judge:**

      Stephen Charles petitions the Court for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254, arguing that the New York state courts erred in admitting evidence from a "showup" identification.[1] Because the state courts relied exclusively on New

---

      [1] In a typical "showup," a single suspect is shown to a witness for immediate identification at or near the scene of the crime. If the witness does not identify the suspect as the perpetrator, the suspect is usually let go. *See Showup*, BLACK'S LAW DICTIONARY (10th ed. 2014). In contrast, a "lineup" refers to a procedure at which the witness is asked to identify the perpetrator at a police station from among a group

1

York law in admitting the identification, the Court is called upon to determine whether the federal due process standard for identification procedures is more protective of defendants than the state standard. The Court finds that, although the federal standard is more protective, the showup identification would have been admissible under the that standard because the identifications were independently reliable. Accordingly, the Court declines to issue the writ.

## I. Procedural History

Charles was convicted of multiple counts of burglary and kidnapping, among other crimes, in connection with a Brooklyn home invasion that took place in September 2006. The police initially arrested Charles for an unrelated crime—leaving the scene of an accident following a high speed chase—but he was soon identified at a showup by two of the victims of the burglary as one of the perpetrators.

At a *Wade*[2] hearing, the state court ruled that the showup identification was admissible. Following Charles's conviction, the Appellate Division affirmed that determination. *People v. Charles*, 973 N.Y.S.2d 763 (App. Div. 2013). The Court of Appeals denied leave to appeal. 22 N.Y.3d 1197 (2014).

---

of other individuals who have similar physical characteristics to the suspect. *See Lineup*, BLACK'S LAW DICTIONARY (10th ed. 2014).

[2] *See United States v. Wade*, 388 U.S. 218 (1967).

## II. The New York and Federal Due Process Standards

Charles argues that the showup identification violated his federal due process rights. When a state court has adjudicated a petitioner's claim on its merits, a federal district court can only grant a writ of *habeas corpus* if the state proceeding "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

Where, as here, the state court only cited to state law, the district court must adopt a rebuttable presumption that the state court adjudicated the federal claims on the merits. *Johnson v. Williams*, 133 S. Ct. 1088, 1096 (2013). Because the state court did not mention the federal claims at all, it could have only reasonably applied federal law if the New York due process guarantees were more protective of defendants' rights than the federal standards. *See id.* Charles and the State dispute which standard is more protective, and so the Court addresses this issue first. It concludes that federal law is more protective.

### A. New York Law

In *People v. Brisco*, 99 N.Y.2d 596 (2003), the Court of Appeals explained that "in the absence of exigent circumstances, where the showup was reasonable under the circumstances—that is, when conducted in close geographic and temporal proximity to the crime—and the procedure used was not unduly suggestive," the

3

showup identification is admissible. The court did not elaborate on what counts as an "unduly suggestive" procedure, but noted with approval that in that case, the witness was able to identify the suspect based on physical characteristics alone. *Id.* at 597.

Other Court of Appeals cases also focus almost exclusively on the temporal and spatial proximity between the showup and the crime. In both *People v. Howard*, 22 N.Y.3d 388, 402 (2013), and *People v. Johnson*, 81 N.Y.2d 828, 831 (1993), the court focused on either exigency or temporal and spatial proximity. When either factor is present, New York courts seem willing to look past the otherwise "strongly disfavored" aspect of showup identifications. *See People v. Riley*, 70 N.Y.2d 523, 529 (1987). As to the "unduly suggestive procedure" prong, *Brisco* explained that this is a "mixed question of law and fact," 99 N.Y.2d at 597, and *Howard* confirmed that it is reviewed very deferentially, *see* 22 N.Y.3d at 403. As a practical matter, New York courts typically find that the procedures used are not "unduly suggestive."

### B. Federal Law

Under federal law, all identifications are evaluated under the same two-pronged test for reliability. *See Raheem v. Kelly*, 257 F.3d 122, 133 (2d Cir. 2001); *see also Manson v. Brathwaite*, 432 U.S. 98, 114 (1977) ("[R]eliability is the linchpin in determining the admissibility of identification testimony."); *Brisco v. Ercole*, 565 F.3d 80, 88 (2d Cir. 2009) ("Reliability is the touchstone for the

4

admission of eyewitness identification testimony pursuant to the Due Process Clause of the Fourteenth Amendment.").

The first prong of the test is whether the identification was unduly (that is, unnecessarily) suggestive. *Brathwaite*, 432 U.S. at 107; *Raheem*, 257 F.3d at 133; *United States v. Concepcion*, 983 F.2d 369, 377 (2d Cir. 1992) ("[Showups] should be avoided where there is no overriding necessity for their use."). Courts repeatedly recite that showups have "been widely condemned," *e.g.*, *Brisco*, 565 F.3d at 88 (2d Cir. 2009) (quoting *Stovall v. Denno*, 388 U.S. 293, 302 (1967)), but also acknowledge that they have advantages—the perpetrator's likeness is still fresh in the minds of witnesses, and, following negative identifications, police can release innocent people and quickly resume the search for the true culprit. *See United States ex rel. Cummings v. Zelker*, 455 F.2d 714, 716 (2d Cir. 1972).

If the court finds that the identification was unduly suggestive, it looks next to independent reliability. *Brathwaite*, 432 U.S. at 114; *Raheem*, 257 F.3d at 133. If the identification was suggestive but nonetheless "independently reliable," the undue suggestiveness is deemed cured. The court conducts a "totality of the circumstances" test based on a weighing of five factors: (1) the witness's opportunity to view the perpetrator at the time of the crime, (2) the witness's degree of attention while viewing the perpetrator, (3) the accuracy of the witness's description of the defendant as the perpetrator, (4) the witness's level of certainty in identifying the

5

defendant as the perpetrator, and (5) the proximity in time between the crime and the showup identification. *Neil v. Biggers*, 409 U.S. 188, 199–200 (1972); *Brisco*, 565 F.3d at 89.

Thus, although temporal and spatial proximity are taken into account as part of both prongs of the analysis, these facts are not dispositive. *See, e.g.*, *James v. Marshall*, No. 05-CV-1992, 2007 WL 3232513, at *12 (E.D.N.Y. Oct. 31, 2007) (finding a showup unduly suggestive notwithstanding close temporal and spatial proximity); *Francischelli v. Potter*, No. 03-CV-6091, 2007 WL 776760, at *7 (E.D.N.Y. Mar. 12, 2007) ("Most troublesome, the state hearing court did not look far beyond the 'geographic and temporal proximity' of the identification in determining that it was admissible.").

## C. Federal Law Is More Protective

Unlike the New York standard, in which temporal and spatial proximity almost always lead to an admissible identification, the federal standard balances proximity against other indicia of suggestiveness and unreliability. This is a more protective standard. The New York courts admitted the showup identification into evidence on the basis of temporal and spatial proximity alone.[3] Meanwhile, the

---

[3] Charles was identified a little less than a mile away from the scene of the burglary, forty-five minutes after it was completed. Both federal and New York courts are in accord that this time span and distance are sufficiently proximate. *See, e.g.*, *Warren v. Conway*, No. 07-CV-4117, 2008 WL 4960454, at *23 (E.D.N.Y. Nov. 18, 2008) (less than 90 minutes and within one mile); *Charlemagne v. Goord*,

federal standard would have called for weighing additional factors that could ultimately lead towards exclusion, as articulated by the Supreme Court in *Neil v. Biggers*. Because the state court did not consider those factors at all in adjudicating Charles's federal due process rights, it unreasonably applied "clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1). Therefore, this Court applies the federal test *de novo*.[4]

### III. *De Novo* Application of Federal Law

Charles argues that the showup identification was unduly suggestive because he was exhibited in handcuffs while surrounded by the police after being arrested for an unrelated crime. Under these circumstances, he argues, any advantages of a showup identification are diminished: the police were not going to release him regardless of the outcome of the identification, and a less suggestive lineup at the police station would have been more appropriate. In response, the government points to cases in which the court held identifications with similar optics to not be unduly suggestive. The government also argues that it was important for the police

---

No. 05-CV-9890, 2008 WL 2971768, at *15 (S.D.N.Y. June 30, 2008) (thirty minutes and eighteen blocks); People *v. Mathis*, 874 N.Y.S.2d 627, 628–29 (App. Div. 2009) (forty minutes and one-half mile); *Brisco*, 99 N.Y.2d at 601 (Smith, J., dissenting) (fifty-five minutes).

[4] However, even in applying the more protective federal standard *de novo*, this Court is bound by underlying factual findings made by the state court, unless they were "unreasonably determin[ed]." *See* 28 U.S.C. § 2254(d)(2); *Sumner v. Mata*, 455 U.S. 591, 597 (1982) (per curiam).

7

to be sure they were arresting Charles for the *correct* crime.  Finally, the government points to a lack of squarely on-point Supreme Court precedent that would indicate that the procedure was contrary to clearly established federal law.  Although the Court finds Charles's argument to be more persuasive, it need not decide either way because even if the showup was unduly suggestive, it was nonetheless independently reliable.

The five-factor *Biggers* test for independent reliability is "assessed in light of the totality of the circumstances." *Raheem*, 257 F.3d at 135.  As the Second Circuit has remarked, no one "factor[] standing alone is dispositive of the existence of independent reliability," *Briscoe*, 565 F.3d at 89.

Here, Charles contends that each factor cuts in his favor.  For example, he notes that the witnesses each had only a few moments to view the burglars, and that the witnesses' attentions were focused more on the perpetrators' weapons than their faces.  He cites no authority to buttress this reasoning, however, while the government points to copious case law that found identifications to be reliable in similar circumstances.  *See, e.g.*, *United States v. Wong*, 40 F.3d 1347, 1360 (2d Cir. 1994); *Gonzalez v. Hammock*, 639 F.2d 844, 847 (2d Cir. 1980).  Charles also argues that the witnesses' certainty should be discounted because one witness testified that she was "out of [her] mind" with fright and the other spent more time focusing on some of the other burglars.  But such reactions are to be expected in burglaries

8

involving multiple perpetrators, and Charles cites no authority for the Court to disregard these witnesses' identifications.

Charles's also notes some of the inaccuracies in the identifications. But even here, most of the discrepancies he points to are insubstantial. He claims, for example, that one of the witnesses inaccurately said that Charles had a Jamaican accent. In fact, the record reveals that the witness only testified to hearing Charles use a Jamaican expletive. That witness's only other inaccuracy was a misjudgment of Charles's height by six inches, which on its own is insufficient to overcome the otherwise accurate identification. *See, e.g.*, *Dunnigan v. Keane*, 137 F.3d 117, 130 (2d Cir. 1998), *abrogated on other grounds by Perry v. New Hampshire*, 565 U.S. 228 (2012) (finding an identification with a two-inch height discrepancy to be nonetheless independently reliable); *Cannon v. Graham*, 06-CV-1175, 2006 WL 3486803, at *6 (S.D.N.Y. Oct. 31, 2006) (same for four inches, noting that "[i]dentifications may be accurate overall, while being inaccurate as to height, particularly where a person is observed in motion and in different activities, and from different vantages and heights"). And as for the other witness, Charles only attacks his general credibility based on the fact that some of the witness's testimony was inconsistent with that of other witnesses. But such a credibility determination is inappropriate for this Court to consider on a *habeas* petition.

Accordingly, the Court sides with the government in concluding that the identifications were independently reliable.

### IV.    Conclusion

For the foregoing reasons, Charles's petition for a writ of *habeas corpus* is denied.  As he has not made a substantial showing of a denial of his federal rights, a certificate of appealability will not issue.  *See* 28 U.S.C. § 2253.

**SO ORDERED**.

/S/ Frederic Block
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
October 18, 2018